UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────

TORI ANN WOJCIECHOWSKI,

Plaintiff,

V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

Defendant.

───────────────────────────────────────

**REPORT AND
RECOMMENDATION**

12-CV-215
(NAM/VEB)

## I. INTRODUCTION

In April of 2009, Plaintiff Tori Ann Wojciechowski applied for disability insurance

benefits under the Social Security Act. Plaintiff alleges that she has been unable to work

since January of 2009 due to physical and psychological impairments. The Commissioner

of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, McMahon Kublik & Smith, P.C., Jan S.

Kublick, Esq., of counsel, commenced this action seeking judicial review of the

Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On June 26, 2013, the Honorable Gary L. Sharpe, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

─────────────────

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner.
The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this
matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for benefits on April 15, 2009, alleging disability beginning on January 13, 2009. (T at 44,112-13).[2] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on July 15, 2010, in Syracuse, New York before ALJ Barry Peffley.[3] (T at 10). Plaintiff, represented by counsel, appeared and testified. (T at 16-26). Testimony was also received from Jay Steinbrenner, a vocational expert. (T at 26).

On September 22, 2010, ALJ Peffley issued a written decision denying Plaintiff's application. (T at 45-62). The ALJ's decision became the Commissioner's final decision on January 19, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, through counsel, timely commenced this action on February 21, 2012. (Docket No. 1). The Commissioner interposed an Answer on May 11, 2012. (Docket No. 5). Plaintiff filed a supporting Brief on May 21, 2012. (Docket No. 9). The Commissioner filed a Brief in opposition on September 19, 2012. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 48).

[3]The ALJ presided via videoconference from Baltimore, Maryland. (T at 10).

[4]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and that this case be remanded for further proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[5]

---

[5]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (January 13, 2009) and met the insured status requirements of the Social Security Act through December 31, 2013.  (T at 50).  The ALJ found that Plaintiff's bi-polar disorder, chronic back pain, and carpal tunnel met the definition of severe impairments, as defined under the Act.   (T at 50).   However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 50-52).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

perform sedentary work, as defined in 20 CFR § 404.1567 (a) and 416.967 (a), with some limitations. (T at 52-56). The ALJ found that Plaintiff was unable to perform her past relevant work as a baker. (T at 56).

Considering Plaintiff's age (35 years old on the alleged onset date), education (high school), work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 56-57). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from the alleged onset date (January 13, 2009) to the date of his decision (September 22, 2010). (T at 57-58).

As noted above, the ALJ's decision became the Commissioner's final decision on January 19, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

###  2.   Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments in support of this position. First, Plaintiff contends that the ALJ did not properly apply the treating physician's rule. Second, she argues that the ALJ's RFC determination is not supported by substantial evidence. Third, Plaintiff challenges the ALJ's credibility assessment. Fourth, Plaintiff argues that her impairment meets or medically equals the impairment set forth at §1.04 of the Listings. This Court will address each argument in turn.

### a.     Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Plaintiff's treating orthopedic surgeon, Dr. Richard Zogby, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form on March 15, 2010.  Dr. Zogby opined that Plaintiff was limited to lifting/carrying less than 10 pounds, standing/walking less than 2 hours in an 8-hour workday, and could not sit for more than 6 hours in an 8-hour workday. (T at 426-27).  Dr. Zogby indicated that Plaintiff could never

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

climb, balance, kneel, crouch, crawl, or stoop. (T at 427). He found that Plaintiff's ability to reach in all directions, handle, and finger were also limited. (T at 428).

The ALJ afforded "little weight" to Dr. Zogby's March 2010 opinion, finding that it was not consistent with the overall medical record and not supported by "facts, reports or data." (T at 56). The ALJ found, contrary to Dr. Zogby's opinion, that Plaintiff could perform the exertional requirements of sedentary work, as defined in 20 CFR § 404.1567 (a) and 416.967 (a),[7] provided she was allowed to sit or stand alternatively without leaving her workstation. (T at 52).

This Court finds that the ALJ did not properly apply the treating physician's rule. As a threshold matter, the ALJ did not detail Plaintiff's limitations on a "function-by-function" basis. An RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).

In particular, the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y.1999).

After that analysis is completed, the ALJ may express the RFC in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy. Hogan v.

---

[7]Sedentary work involves lifting up to 10 pounds at a time and occasionally lifting and carrying light objects. It also generally involves up to 2 hours of standing or walking and 6 hours of sitting in an 8-hour work day. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); SSR 83–10; 20 C.F.R. § 404.1567(a).

<u>Astrue</u>, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

The Second Circuit has not yet decided whether failure to provide a function-by-function assessment is *per se* grounds for a remand.

At least three circuit courts of appeal have concluded that a function-by-function analysis is desirable, but not an absolute requirement if the rationale for the ALJ's RFC assessment can be readily discerned. <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir.2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); <u>Depover v. Barnhart</u>, 349 F.3d 563, 567 (8th Cir.2003) (an ALJ does not fail in his or her duty to assess a claimant's RFC on a function-by-function basis merely because the ALJ does not address all areas regardless of whether a limitation is found); <u>Delgado v. Comm'r of Soc. Sec.</u>, 30 F. App'x 542, 547 (6th Cir.2002).[8]

District courts in the Second Circuit have reached conflicting conclusions. <u>See</u>, <u>e.g.</u>, <u>Wood v. Comm'r of Soc. Sec.</u>, No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009)(collecting cases); <u>McMullen v. Astrue</u>, 05-CV-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008); <u>Brown v. Barnhart</u>, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr.15, 2002)("In sum, because the ALJ did not properly apply the legal standard in Social Security Ruling 96-8p for assessing residual functional capacity, I cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her

---

[8]The Third Circuit and Seventh Circuit have reached similar conclusions, albeit in unpublished decisions. <u>See</u> <u>Bencivengo v. Comm'r of Soc. Sec.</u>, 251 F.3d 153 (3d Cir.2000)) ("Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."); <u>Zatz v. Astrue</u>, 346 F. App'x 107, 111 (7th Cir.2009) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.").

past work was supported by substantial evidence."); Matejka v. Barnhart, 386 F.Supp.2d 198, 208 (W.D.N.Y.2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk ... Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."); but see Casino-Ortiz v. Astrue, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007)(sustaining ALJ's decision, notwithstanding failure to provide function-by-function analysis); Novak v. Astrue, No. 07 Civ. 8435, 2008 WL 2882638, at *3 & n. 47 (S.D.N.Y. July 25, 2008)("The A.L.J. must avoid perfunctory determinations by considering all of the claimant's functional limitations, describing how the evidence supports her conclusions, and discussing the claimant's ability to maintain sustained work activity, but she need not provide a narrative discussion for each function."); but see Martin v. Astrue, No. 05-CV-72, 2008 WL 4186339, at *16 (N.D.N.Y. Sept. 9, 2008) (declining to remand, despite finding that the ALJ grouped the functions in his function-by-function analysis because "treating the activities separately would not have changed the result of the RFC determination").

In general, this Court is inclined toward the view that an ALJ's failure to provide a function-by-function analysis might constitute harmless error, provided that the absence of analysis did not frustrate meaningful review of overall RFC assessment.[9]

In this case, remand is warranted under either a *per se* standard or harmless error review. In failing to provide a function-by-function assessment, the ALJ appears to have

_____

[9]Several courts have recognized the general applicability of the harmless error rule to the review of disability denial claims. See, e.g., Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995).

given inadequate consideration to the question of Plaintiff's ability to sit for prolonged periods. See Mardukhayev v. Comm'r of Social Sec., 2002 WL 603041, at *5 (E.D.N.Y.2002) (internal citation omitted) (noting that the "failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions.").

The ALJ determined that Plaintiff retained the RFC to perform sedentary work, which "generally involves up to . . . six hours of sitting in an eight-hour workday." Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996). Thus, if Plaintiff cannot sit for six hours in an eight-hour workday, her ability to perform a sedentary work has been eroded. The ALJ did not make a specific finding regarding how long Plaintiff could sit during an 8-hour workday. He did find that Plaintiff could need to sit or stand alternatively without leaving her work station, but it is not clear how he arrived at this conclusion.

The only opinion provided by a treating physician regarding Plaintiff's ability to sit for prolonged periods was Dr. Zogby's March 2010 assessment that Plaintiff was limited to sitting for less than 6 hours in an 8-hour workday. (T at 427).

The ALJ discounted the March 2010 assessment by noting that it was not "consistent with the . . . overall medical record." (T at 56). However, Dr. Zogby's March 2010 assessment was consistent with the opinion provided Dr. Nikita Dave, an orthopedic consultative examiner. Dr. Dave opined that Plaintiff had "moderate limitation for prolonged siting." (T at 325). The vocational expert testified that Plaintiff could not perform sedentary work if she was limited to sitting for less than 6 hours in an 8-hour workday. (T at 33-34). As such, the lack of adequate supporting evidence and explanation with regard to Plaintiff's ability to sit for prolonged periods materially impacts the ALJ's analysis.

In addition, in deciding to discount Dr. Zogby's March 2010 opinion, it appears the ALJ misread one of Dr. Zogby's treatment notes. In particular, the ALJ afforded great weight to a February 2010 treatment note, finding that the note supported his RFC determination and his decision to discount Dr. Zogby's March 2010 opinion. (T at 55-56). However, as set forth below, the ALJ appears to have misinterpreted the February 2010 note, which is actually consistent with the prolonged sitting limitation identified in the March 2010 opinion.

The ALJ described the February 2010 treatment note as follows: "Upon examination, Dr. Zogby found that [Plaintiff's] symptoms were not consistent with her mechanical symptoms and that based on [Plaintiff's] imaging studies no surgical intervention was warranted due to . . . improvement of function and decreased pain." (T at 55). The ALJ thus found that this treatment note established that there was "little objective medical evidence" to corroborate Plaintiff's complaints of lower back pain. (T at 55). In other words, the ALJ read the February 2010 note as indicating that Dr. Zogby did not find Plaintiff's complaints credible and did not believe surgical intervention was necessary.

An accurate reading of the treatment note yields a different conclusion. Plaintiff was being seen by Dr. Zogby for consultation regarding surgery, namely, the installation of a spinal cord stimulator. (T at 380). Plaintiff had experienced some improvement with a temporary stimulator and Dr. Zogby was being asked for his opinion on whether surgery to install a permanent stimulator was appropriate. Contrary to the ALJ's suggestion, Dr. Zogby did not find that "no surgical intervention was warranted." In fact, although Dr. Zogby found that surgical intervention of "*another type*" was not warranted, he *recommended* surgery to install a permanent surgical cord stimulator. (T at 381)(emphasis

12

added). Thus, the ALJ afforded "significant weight" to the February 2010 treatment note, while drawing exactly the opposite conclusion reached in that note (i.e. that Plaintiff's condition was not serious enough to warrant surgery).[10] Moreover, Plaintiffs' treating providers generally found Plaintiff to be credible and recommended and performed surgery based on their findings and Plaintiff's complaints. This contradicts the ALJ's suggestion that there was no objective support for Plaintiff's impairments or that Plaintiff's providers did not find her generally credible. (T at 389 - Dr. Short noting that "patient's history of the injury/illness is consistent with my objective findings"; T at 396 - Dr. Zogby noting that Plaintiff appeared to be in "moderate pain," with "affect" that was "appropriate to the situation").

As such, this Court finds that a remand is warranted for (1) a function-by-function assessment, including (in particular) careful consideration as to whether Plaintiff can sit for prolonged periods and (2) reconsideration of Dr. Zogby's March 2010 opinion in light of the concerns outlined above.

### b. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

---

[10]The surgery was performed in April of 2010. In post-surgery treatment note Dr. Zogby described Plaintiff as totally disabled from the date of the surgery "until further notice." (T at 423).

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

As outlined above, the ALJ's RFC determination was deficient. The ALJ concluded that Plaintiff could perform sedentary work, provided she was given the option of alternating between sitting or standing without leaving her work station. (T at 52). However, it is not clear how the ALJ arrived at the conclusion that Plaintiff could sit for at least 6 hours in an 8-hour work day. The ALJ did not make a specific finding in this regard and the only specific assessment offered by a treating provider (Dr. Zogby's March 2010 opinion) indicated that Plaintiff could *not* sit for that long. (T at 426-27). This finding by Dr. Zogby was generally consistent with the opinion of Dr. Dave (the consultative examiner), who opined that Plaintiff had "moderate limitation for prolonged siting." (T at 325). The ALJ's decision to discount Dr. Zogby's March 2010 opinion (again, the only treating source opinion on this key question) was flawed for the reasons outlined above. Moreover, it is not clear how the ALJ arrived at the conclusion that Plaintiff could manage the demands of sedentary work with sit/stand option.

The Commissioner defends the ALJ's RFC determination by noting that Dr. Short and Dr. Zogby cleared Plaintiff to return to work in April of 2009. (T at 242, 352) However, it is not clear that either physician was actually concluding that Plaintiff could satisfy the requirements of sedentary work. In fact, Dr. Zogby's treatment note indicated that Plaintiff

14

could return to work, but could not lift more than 10 pounds, work more than 6 hours per day, or "sit or stand for long periods of time," a finding inconsistent with the demands of sedentary work. (T at 352). Dr. Short was treating Plaintiff's carpal tunnel and it appears his opinion was indicating that that condition (considered in isolation) was no longer a barrier to Plaintiff returning to work. (T at 242). As such, considered in context, neither of these treatment notes provides substantial evidence to support the RFC determination.

Accordingly, a remand is necessary for reconsideration of the RFC determination.

### c.   Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v.

Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: She worked as a baker at a Wegman's grocery store until January of 2009. (T at 19). She stopped worked at that time due to carpal tunnel syndrome. (T at 19). She had surgery on both wrists. (T at 21-22). Her lower back pain became gradually worse until Plaintiff was no longer able to perform any work. (T at 22). She experiences paralysis after sitting for prolonged periods. (T at 22). She can stand for possible 20-30 minutes and walk for 20 minutes "at a snail's pace." (T at 23). Her prescription pain medication (Hydrocodone and Oxycodone) cause her to have difficulty concentrating. (T at 23). The spinal cord stimulator (which was surgically installed in April of 2010) provides some relief, but Plaintiff continues to experience debilitating pain. (T at 24). She changes positions constantly during the course of the day. (T at 25).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC determination. (T at 55).

The credibility assessment should be revisited on remand. First, while a "claimant's credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." Gehm v. Astrue, No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); see also Patterson v. Astrue, No. 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013)("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived

at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination.").

Second, as discussed above, the ALJ gave "significant weight" to Dr. Zogby's February 2010 treatment note, erroneously concluding that the note represented the treating physician's opinion that Plaintiff's back pain was not serious enough to warrant surgery and not supported by objective evidence. (T at 55). In fact, Dr. Zogby recommended and performed surgery to treat Plaintiff's back pain. Plaintiff's treating providers generally found her complaints credible. (T at 389, 396). The psychiatric consultative examiner, Dr. Dennis Noia, noted that the results of his examination were consistent with Plaintiff's allegations. (T at 312).

Lastly, Plaintiff worked for more than five (5) years (starting when she was 19) as a baker at a grocery store. (T at 166). Some consideration should have been given to this work history when the ALJ assessed Plaintiff's credibility. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

On remand, the ALJ should revisit the issue of Plaintiff's credibility.

### d.    Listing 1.04 (A)

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration

requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

Listing 1.04A provides as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.     Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); ....

19

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Dr. Zogby opined that Plaintiff's back impairment met § 1.04A of the Listings. (T at 425). The ALJ found that Plaintiff's impairment did not meet any of the Listings, including "any listing found under 1.00" of the Listings. (T at 50). However, the ALJ did not specifically discuss Listing § 1.04A or address Dr. Zogby's opinion as to that Listing. This issue should likewise be revisited on remand, with a further analysis and detailed explanation being provided.

## 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the reasons outlined above, this Court recommends that Plaintiff be GRANTED judgment on the pleadings and that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for further proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:

July 29, 2013

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge